UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
YVETTE OWO,

        Plaintiff,

  -against-

LIFE INSURANCE COMPANY OF NORTH
AMERICA; ACCENTURE, LLP; and ACCENTURE
UNITED STATES GROUP INSURANCE PLAN,

        Defendants.
------------------------------------x

MEMORANDUM DECISION
AND ORDER

19 Civ. 3016 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: DEC 1 2 2019

GEORGE B. DANIELS, United States District Judge:

Plaintiff Yvette Owo brings this action against Defendants Life Insurance Company of North America ("LINA"); Accenture, LLP ("Accenture"); and Accenture United States Group Insurance Plan ("Plan"). (Am. Compl., ECF No. 29.) Plaintiff alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001–1461 and in scattered sections of 26 U.S.C.), by failing to produce the short-term disability ("STD") wage replacement policy, and that she is entitled to the associated penalty. (*Id.* ¶ 27.) Plaintiff also alleges that Defendants breached their contract with Plaintiff by denying her STD benefits. (*Id.* ¶ 37.) Defendants Accenture and Plan move to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Accenture and Plan's Notice of Mot. to Dismiss, ECF No. 33.) Defendant Accenture and Plan's motion to dismiss for failure to state a claim is GRANTED.

## I. FACTUAL BACKGROUND

Accenture provides an STD wage replacement to eligible employees under its Leave of Absence Policy ("LAP"), which is administered by Cigna, LINA's parent company.[1] (Am. Compl., Ex. B (Leaves of Absence), ECF No. 29-2, at ACC_OWO 000014.) According to Accenture's LAP, "[t]he purpose of this policy is to detail the terms and conditions that apply to nonmedical and medical-related leaves of absences to US employees, as well as wage replacement options that may be available." (Id. at ACC_OWO 000003.)

An employee is eligible for an STD wage replacement when Cigna determines that, solely due to "an illness, injury[,] or other medical condition," the employee is unable to (1) perform the material duties of her occupation and (2) earn at least 80% of her regular earnings from working in her regular occupation. (Id. at ACC_OWO 000014.) Once the employee meets these conditions, she will receive (1) 100% of her base pay for up to the first 60 calendar days and (2) 60% of her base pay for up to the next 120 calendar days. (Id. at ACC_OWO 000015.)

In the event that Cigna denies a claim for an STD wage replacement, the employee "will receive a notice which will include (1) the specific reasons for the denial, (2) a description of any additional information [she] may wish to submit for review, if applicable, and (3) [her] right to appeal the claim." (Id. at ACC_OWO 000017.) The employee may appeal the claim denial by submitting a written request within 180 days following receipt of the initial denial notice. (Id.) If the initial appeal is denied by Cigna, the employee will receive another notice and may file a second-level appeal in writing within 180 days following receipt of the initial appeal denial notice.

---

[1] LINA separately administers Accenture's long-term disability ("LTD") policy under the Accenture United States Group Insurance Plan ("Insurance Plan"). (Am. Compl., Ex. C (Insurance Plan), ECF No. 29-3.) The Insurance Plan is a "consolidated welfare plan under Section 3(1) of ERISA." (Id. at ACC_OWO 000026.) At oral argument, Plaintiff stated that she has a pending LTD claim with Accenture. (Tr. of Oral Arg. dated Sept. 12, 2019 at 23:16–19.) ("I can't get into too much terms because it's a quasi-settlement but we now have a long-term disability claim pending outside of litigation just in the normal claim course.")

(*Id.* at ACC_OWO 000018.) Finally, if the second-level appeal is denied by Cigna, the employee "will receive a notice which will include the specific reasons for the denial and a reminder that [she has] exhausted [her] administrative remedies under the policy." (*Id.*) Such decision by Cigna "is final and binding on all parties." (*Id.*)

Plaintiff began working at Accenture in June 2007. (Am. Compl. ¶ 9.) Plaintiff alleges that she "last worked at Accenture in September 2017, when her disabling condition had reached the point of leaving her with no reasonable alternative other than to cease working," and that she applied for STD benefits through Accenture's LAP. (*Id.* ¶¶ 9, 33.) Plaintiff asserts that since 2016, she "has suffered from a wide array of physical ailments" that "have gradually progressed in quantity and severity." (*Id.* ¶ 10.) Plaintiff was diagnosed with fibromyalgia in August 2018, after LINA's first-level appeal denial in June 2018. (*Id.* ¶¶ 10–11.) On October 1, 2018, Plaintiff sent a letter to LINA requesting "any policy or plan subject to ERISA." (*Id.* ¶ 16.) Thereafter, "LINA supplied some (but not all) of the administrative record" and took the position that the STD benefits policy "could only be supplied by Accenture." (*Id.* ¶ 17.) LINA denied Plaintiff's second-level appeal in February 2019 on the basis that "the clinical records on file did not demonstrate a functional impairment, as evidenced by unremarkable findings, laboratory work, and treatment modalities." (*Id.* ¶ 21.) Plaintiff exhausted her administrative remedies under Accenture's LAP.

Subsequently, Plaintiff commenced this action on April 4, 2019. (Compl., ECF No. 1.) On June 24, 2019, Plaintiff filed an amended complaint against Defendants, asserting that Defendants failed to produce the STD benefits policy in violation of ERISA, and thus Plaintiff is entitled to an associated penalty, and that Defendants breached their contract by denying her STD benefits. (Am. Compl. ¶¶ 27, 37.) Defendants Accenture and Plan now move to dismiss Plaintiff's complaint for failure to state a claim on the grounds that "Accenture's short-term disability wage

3

replacement benefit is a payroll practice exempt from ERISA" and that there was "no binding, enforceable contract . . . between OWO and Accenture." (Mem. in Supp. of Def. Accenture and Plan's Mot. to Dismiss ("Mem."), ECF No. 34, at 1.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda,* 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

4

## III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ERISA AND BREACH OF CONTRACT CLAIMS IS GRANTED

### A. The ERISA Claim.

Defendants Accenture and Plan argue that Plaintiff's ERISA claim should be dismissed because the STD wage replacement policy at issue is not covered by ERISA. (Mem. at 7–9.) Under ERISA, an "employee benefit plan" includes an "employee welfare benefit plan." 29 U.S.C. § 1002(3). Specifically, ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). The Department of Labor has issued regulations providing clarification on the definition of an employee welfare benefit plan. In particular, the regulations exempt from the scope of ERISA "payroll practices," including "payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." 29 C.F.R. § 2510.3-1(b)(2).

Here, it is undisputed that Accenture's STD wage replacement policy is a "self-funded, payroll practice" that is "excluded from ERISA." (*See* Am. Compl. ¶ 1 n.2; *see also id.* ¶ 27 n.9.) Given that Accenture's STD wage replacement policy is not governed by ERISA, Plaintiff cannot compel "production of the administrative record [or an] award of administrative record production failure penalty" pursuant to ERISA. (*Id.* ¶ 27.) Accordingly, Plaintiff has no basis to compel production of Accenture's STD wage replacement policy pursuant to ERISA because the policy itself is a payroll practice not subject to the provisions of ERISA.

5

Additionally, Plaintiff seeks an "award of administrative record production failure penalty" under ERISA. (*Id.* ¶ 27.) Pursuant to 29 U.S.C. § 1132(c)(1), an administrator of an ERISA plan is subject to a penalty of up to $100 per day for each day that she "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1). Further, 29 C.F.R. § 2575.502c-1 increases the maximum amount of the penalty from $100 per day to $110 per day for violations occurring after July 29, 1997. 29 C.F.R. § 2575.502c-1. Plaintiff contends that "201 days passed without defendants' satisfaction of the administrative record / germane record requests made . . . regarding [Plaintiff's] claim. At $110.00 [per] day, the administrative penalty totals at least $22,110.00." (*Id.* ¶ 30.) However, because ERISA provisions do not cover Accenture's STD wage replacement policy, Plaintiff is not entitled to an award of administrative record production failure penalty under ERISA. Therefore, because Accenture's STD wage replacement policy is a payroll practice not covered by ERISA, Plaintiff's ERISA claim is dismissed.

### B. The Breach of Contract Claim.

In addition to her ERISA claim, Plaintiff asserts that Defendants breached their contract with Plaintiff by denying her STD benefits. (Am. Compl. ¶ 37.) In her opposition brief, Plaintiff contends that Accenture's LAP formed part of the "employment package" between her and Accenture. (Am. Compl. ¶ 33.) As is settled under New York law, "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (N.Y. Ct. App. 2001); *see also Rothbein v. City of New York*, No. 18 Civ. 5106 (VEC), 2019 WL 977878, at *14 (S.D.N.Y. Feb. 28, 2019) (dismissing the breach of contract claim and reaffirming the holding in *Lobosco* that employer policies should not lightly be converted into employment agreements). As

6

the *Lobosco* court noted, such conversion "would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision." *Lobosco*, 96 N.Y.2d at 317.

Here, Accenture's LAP is essentially internal policies detailing "the terms and conditions that apply to non-medical and medical-related leaves of absences available to US employees, as well as wage replacement options that may be available." (Am. Compl., Ex. B (Leaves of Absence), at ACC_OWO 000003.) Following the reasoning articulated by the *Lobosco* court, one cannot convert such policies into a contract. *See Lobosco*, 96 N.Y.2d at 317. Accordingly, Plaintiff's claim against Defendants Accenture and Plan for breach of contract is also dismissed.[3]

## IV. CONCLUSION

Defendant Accenture and Plan's motion to dismiss, (ECF No. 33), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
December 11, 2019

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

[3] Because this Court finds that Accenture's internal policies for STD wage replacement benefits are not enforceable contracts in New York, it need not address Defendants' alternative theory for dismissal of Plaintiff's breach of contract claim—that is, that "there was no mutual assent between the parties because Accenture can change its policy without notice." (Mem. at 5.)

7